**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| DENNIS DUMAS,<br>Plaintiff,<br>-against-<br>KROLL, LLC,<br>Defendant. | X<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>X | Civil Action No. 1:23-cv-05013<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT KROLL, LLC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Of Counsel:

Ephraim J. Pierre
Dov Kesselman
Ashley Casey

Dated: September 5, 2025

SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500
*Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

LEGAL ARGUMENT .......... 2

I. Discrimination Cases, like this one, are Entitled to Summary Judgment .......... 2

II. The Secondment Offer Does not Show Discriminatory or Retaliatory Animus .......... 3

III. Plaintiff's Newly Asserted Cooperative Dialogue Claim Fails .......... 6

IV. Kroll's PIP Process was Consistent with its Policies and Practices .......... 8

V. Kroll's Decisions were Not Motivated by Discrimination or Retaliation .......... 9

CONCLUSION .......... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abada v. Delta Air Lines, Inc.*,
2022 WL 894704 (2d Cir. Mar. 28, 2022) .......... 3

*Abdu–Brisson v. Delta Air Lines, Inc.*,
239 F.3d 456 (2d Cir. 2001) .......... 3

*Allen v. City of N.Y.*,
2024 WL 3965697 (S.D.N.Y. Aug. 28, 2024) .......... 5

*Bentley-Ammonds v. Northwell Health, Inc.*,
2022 WL 893716 (2d Cir. Mar. 28, 2022) .......... 10

*Brown v. Henderson*,
257 F.3d 246 (2d. Cir. 2001) .......... 3

*Cangro v. N.Y.C. Dep't of Fin.*,
2024 WL 3833971 (S.D.N.Y. Aug. 14, 2024) .......... 7

*Gittens-Bridges v. City of N.Y.*,
2023 WL 8825342 (2d Cir. Dec. 21, 2023) .......... 5

*Greenbaum v. N.Y.C. Transit Auth.*,
2022 WL 3347893 (2d Cir. Aug. 15, 2022) .......... 6

*Griffin v. Ambika Corp.*,
103 F. Supp. 2d 297 (S.D.N.Y. 2000) .......... 9

*Heiden v. N.Y.C. Health & Hosps. Corp.*,
2023 WL 171888 (S.D.N.Y. Jan. 11, 2023) .......... 6, 7

*Holcomb v. Iona Coll.*,
521 F.3d 130 (2d Cir. 2008) .......... 3

*Hosking v. Mem'l Sloan-Kettering Cancer Ctr.*,
186 A.D.3d 58 (1 Dep't 2020) .......... 6

*Lifranc v. N.Y.C. Dep't of Educ.*,
2010 WL 1330136 (E.D.N.Y. Apr. 6, 2010), *aff'd*, 415 F. App'x 318 (2d Cir. 2011) .......... 10

*Macropoulos v. Metro. Life Ins. Co.*,
2018 WL 1508564 (S.D.N.Y. Mar. 26, 2018) .......... 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)....................3

*Melman v. Montefiore Med. Ctr.*,
98 A.D.3d 107 (1st Dep’t 2012)....................11

*Owens v. City of N.Y. Dep't of Educ.*,
2022 WL 17844279 (2d Cir. Dec. 22, 2022)....................10

*Ricks v. Conde Naste Pub., Inc.*,
92 F. Supp. 2d 338 (S.D.N.Y. 2000)....................9

*Rochelle v. AutoZoners, LLC*,
2023 WL 5935835 (S.D.N.Y. Sept. 12, 2023)....................8

*Romero v. St. Vincent’s Servs., Inc.*,
2023 WL 3477161 (2d Cir. May 16, 2023)....................10

*Shah v. Helen Hayes Hosp.*,
252 F. App’x 364 (2d Cir. 2007)....................6

*Weinstock v. Columbia Univ.*,
224 F.3d 33 (2d Cir. 2000), *cert. denied,* 540 U.S. 811 (2003)....................2, 3

*Wright v. City of Syracuse*,
611 F. App'x 8 (2d Cir. 2015)....................11

*Xiao Hong Zheng v. Perfect Team Corp.*,
739 F. App'x 658 (2d Cir. 2018)....................8

**Statutes**

N.Y.C. Admin. Code § 8-102....................6

## PRELIMINARY STATEMENT

Plaintiff Dennis Dumas's ("Plaintiff") Opposition ("Opp.") to Kroll LLC's ("Kroll") summary judgment motion confirms why summary judgment should be granted. The admitted or unrebutted record evidence shows:

- Plaintiff received an extended, uninterrupted personal leave of absence—even though he was not entitled to FMLA or short-term disability leave. (JSOF ¶ 39-42.)
- Plaintiff was granted his requested remote-work accommodation and appeared onsite ***only once*** between July 18, 2022 and his termination of employment. (JSOF ¶ 58-63.)
- No one made derogatory comments regarding his health condition or accommodation. (JSOF ¶ 73, 77; SOF ¶ 35, 79, 82.)
- Plaintiff was subject to and received the 2022 FCSR Goals and Objectives for Directors. (JSOF ¶ 30; SOF ¶ 4.)
- Plaintiff ranked last in utilization and failed to achieve even 80% of his pro-rated business generation goals. (SOF ¶ 94, 96, 98.)
- Plaintiff maintained fewer than the 20–25 clients for a Director despite Kroll's expectations. (SOF ¶ 92.)
- Even if Plaintiff received all "backed out" or "reversed hours" his utilization would only reach approximately 32%, well short of the 70% Director goal. (SOF ¶ 99.)
- Joseph and Povinelli had expressed dissatisfaction with Plaintiff's performance before the Assured secondment. (SOF ¶ 40-45, 50-53.)
- The Assured secondment required a three-day-per-week onsite presence, which Plaintiff was unable to provide—even with a car service—due to his medical restrictions. (JSOF ¶ 88; SOF ¶ 65, 67.)
- Kroll's Corrective Action Policy does not impose a standard timeframe for PIPs, not all PIP recipients receive follow-up meetings, and PIP recipients received variable timeframes. (JSOF ¶ 17-19, 126.)
- During the PIP period (October 25–November 28, 2022), Plaintiff had access to Joseph and Povinelli, discussed his performance with Povinelli, attended weekly Directors' meetings, and understood the PIP. (JSOF ¶ 105-109; SOF ¶ 85-86, 88, 97, 107.)
- Plaintiff's peers asked for his removal from an active matter during the PIP, echoing the performance concerns raised by Joseph and Povinelli. (SOF ¶ 125.)

Rather than addressing this undisputed record evidence or the controlling case law in Kroll's moving brief, Plaintiff relies on speculation and unsupported theories surrounding the Assured secondment to rescue his claims. Such tactics cannot salvage claims that are legally and factually deficient.

Plaintiff's disability discrimination claims fail because he points to no evidence—beyond his own self-serving, subjective assertions—of disability-based animus. The record, by contrast, shows that Kroll accommodated Plaintiff and provided him with ample feedback and resources to improve before and after his PIP, which he failed to do. The termination decision, which was unrelated to the secondment, was based on sustained and well-documented performance deficiencies, corroborated by his managers, his peers, and objective performance data.

Plaintiff likewise cannot rebut Kroll's legitimate, non-discriminatory, or retaliatory reason for termination: his poor performance. His Opposition does not identify contrary evidence, and admits his accommodation was never disturbed and that objective metrics show he was the worst-performing Director. Indeed, Plaintiff ***has not and cannot point to a single worst performing non-disabled, Director who was not placed on a PIP or terminated***. His retaliation claim fares no better, as Plaintiff fails to establish any causal connection between and offers no evidence of retaliatory animus or pretext. For these reasons, and those set forth in Kroll's moving brief, summary judgment should be granted.

## LEGAL ARGUMENT

### I. Discrimination Cases, like this one, are Entitled to Summary Judgment

The Second Circuit has repeatedly "remind[ed] district courts that the impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal quotation and citation

omitted), *cert. denied*, 540 U.S. 811 (2003). "The salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to . . . other areas of litigation." *Id; see also Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."). Plaintiff "must 'do more than simply show that there is some metaphysical doubt as to the material facts,'" he must "come forth with evidence sufficient to allow a reasonable jury to find in [their] favor." *Brown v. Henderson*, 257 F.3d 246, 252 (2d. Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The NYCHRL is "not a general civility code," and Plaintiff bears the ultimate burden of showing "that the challenged conduct is caused by a discriminatory motive." *Abada v. Delta Air Lines, Inc.*, 2022 WL 894704, at *2 (2d Cir. Mar. 28, 2022). Thus, summary judgment is appropriate in cases, like this one, where Plaintiff primarily relies on conclusory allegations and conjecture to "counter" evidence supporting Kroll's legitimate, non-discriminatory rationale. *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).

## II. The Secondment Offer Does not Show Discriminatory or Retaliatory Animus

Plaintiff's Opposition disregards the overwhelming record and case law undermining his disability discrimination and retaliation claims. (Mem. at 4-28.)[1] Instead, he attempts to salvage his claim based solely on his subjective belief that Kroll's decisions to place him on a PIP and later terminate his employment were motivated by his request for a car service in connection with the Assured Secondment. (Opp. at 15-18.) Plaintiff is wrong.

***First***, Plaintiff misconstrues the record. Plaintiff was under consideration for a PIP ***on July 5, 2022*** due to his deteriorating work performance. Plaintiff's productivity was nearly

[1] Kroll's moving brief is cited as "Mem. at __."

nonexistent as his utilization averaging just 19% from April 18, 2022 through August 2022. (SOF ¶ 17.) Even prior to his July 18, 2022 workplace fall, his utilization never exceeded 58%, which is well short of the 70% expectation for Directors. (JSOF ¶ 30, 110; SOF ¶ 17, 50–51, 94, 98.) Povinelli further found Plaintiff's management of projects and supervision of a junior Analyst "disappointing." (JSOF ¶ 70; SOF ¶ 16-25, 39-48, 69-76, 89-121.) By July 5, 2022—***more than two weeks before his remote-work accommodation request and over two months before the secondment offer***—Joseph concluded that Plaintiff was "heading to PIP Land, especially since he has been here under 1 year." (SOF ¶ 19.) Rather than issuing the PIP, Joseph gave Plaintiff another chance through a negative Mid-Year Performance Review on August 8, 2022. (JSOF ¶ 71–73.) By August 31, 2022, consistent with Kroll's Corrective Action Policy, Joseph (not Povinelli) asked to proceed with a PIP. (JSOF ¶ 79; SOF ¶ 77.) Lewis agreed, instructed that one be drafted, and provided a template for the management team. (*Id.*) Accordingly, on September 2, 2022, the management team decided to place Plaintiff on a PIP. (Joseph Dep. 151:18-25, 153:4-20; Pierre Decl., Ex. OO at KROLL at 1479–1482.) Povinelli provided the initial draft on September 27, 2022, consistent with Joseph's directive on August 31, 2022, HR's guidance, and Kroll's Corrective Action Policy.

This undisputed sequence of events defeats Plaintiff's alleged theory of causation. (Opp. at 16-17.) The PIP decision predated both Plaintiff's request for a remote work accommodation by weeks and predated the secondment offer by more than two months, foreclosing any inference based on temporal proximity. (Mem. at 7-8.)

***Second***, in addition to distorting the timeline, Plaintiff twists Povinelli's comments to manufacture animus where there is none based on the admitted facts (Opp. at 16):

- The three-day onsite requirement was not made by Kroll, but by the Company's client, as part of the secondment engagement and agreement. (JSOF ¶ 88; SOF ¶ 57.)

- Kroll retained the Assured engagement by providing on-site support from Povinelli and Lance Friedler ("Friedler"). (JSOF ¶ 94-95; SOF ¶ 68.)
- Neither Friedler nor Povinelli used a car service to participate in the secondment.
- Plaintiff continued with his remote work accommodation after Povinelli withdrew the secondment offer, and she continued to provide him with assignments. (JSOF ¶ 99-100.)

Instead, Plaintiff argues that Povinelli's supposed animus is reflected in two statements: (1) stating that Friedler would "take one for the team;" and (2) stating that she would speak with Lewis to "put forth a plan" for Plaintiff. (Opp. at 16-17.) Neither comment bears any connection to Plaintiff's alleged disability or car service request. Povinelli's "take one for the team" remark merely confirmed Friedler's assignment to the secondment. If anything, this comment indicates that Friedler (not Povinelli), would bear potential animus against Plaintiff. Likewise, there is no basis in the record to infer that Povinelli's reference to a "plan" concerned Plaintiff's PIP, which had already been approved by Joseph before the secondment offer was made. *See* JSOF ¶ 90; SOF ¶ 77-78. Plaintiff's attempt to construe these neutral remarks as discriminatory is nothing more than speculation. *See Allen v. City of N.Y.*, 2024 WL 3965697, at *7 (S.D.N.Y. Aug. 28, 2024) ("a plaintiff's subjective belief that she was the victim of discrimination, no matter how strongly felt, is insufficient . . . ")

Even assuming these comments were related to Plaintiff's disability or car-service request (which there are not), Plaintiff was not entitled to empathetic managers and these comments are at best "a stray remark" that is temporally and contextually distinct from PIP decision (made beforehand) or termination of employment (made more than two months later). (Mem. at 6-7, 22;) *See Gittens-Bridges v. City of N.Y.*, 2023 WL 8825342, at *2 (2d Cir. Dec. 21, 2023) (affirming summary judgment where the plaintiff failed to point to any derogatory comments).

## III. Plaintiff's Newly Asserted Cooperative Dialogue Claim Fails

Realizing the lack of evidence supporting his secondment theory, Plaintiff now asserts, for the very first time in this litigation, a cooperative dialogue claim. This is unavailing.

***First***, Plaintiff cannot amend his Complaint through his Opposition. A "cooperative dialogue" claim is an independent actionable claim under the NYCHRL. *Greenbaum v. N.Y.C. Transit Auth.*, 2022 WL 3347893, at *5 (2d Cir. Aug. 15, 2022). It is analytically distinct from a disparate treatment claim because it does not turn on whether a plaintiff was treated "less well" based on disability or examines the defendant's intent, but rather on whether the employer engaged in a "good faith written or oral dialogue concerning the person's accommodation needs, potential accommodations that may address those needs, and the difficulties that such accommodations may pose for the covered entity." N.Y.C. Admin. Code § 8-102; *see also Hosking v. Mem'l Sloan-Kettering Cancer Ctr.*, 186 A.D.3d 58, 64 (1 Dep't 2020) (explaining accommodation claims under state and city laws).

Plaintiff has never asserted an independent cooperative dialogue claim or mentioned the phrase in his Complaint. (ECF No. 1.) The same is true of Plaintiff's premotion letter practice, which never identified a cooperative dialogue claim as a theory for liability. (ECF No. 35.) Because Plaintiff failed to plead such a claim, he cannot raise it for the first time in opposition. *See, e.g., Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint.").

Plaintiff hopes to distract from this key defect by citing to *Heiden v. N.Y.C. Health & Hosps. Corp.*, and claiming that the Court there considered a cooperative dialogue claim even though it was not pled. 2023 WL 171888, at *32 (S.D.N.Y. Jan. 11, 2023). This is false. The *Heiden* Court did not rule on the sufficiency of the Complaint as it was not raised by the

defendants; but rather, it addressed the merits of pled and asserted accommodation claims. *Id*. Indeed, the *Heiden* plaintiff expressly alleged a failure to accommodate, including that defendants "discriminated against Plaintiff on the basis of his disability in violation of the NYCHRL by, *inter alia*, denying him equal terms and conditions of employment, ***and failing to provide a reasonable accommodation***." (Galen Decl., Ex. 19, ¶ 75 (emphasis added)). By contrast, Plaintiff never alleged a failure to accommodate. Instead, his Complaint asserts only that he faced antagonism after his request for and receipt of his remote work accommodation. (Compl. ¶ 51–63.) These allegations are not remotely sufficient to raise a cooperative dialogue claim. *See Cangro v. N.Y.C. Dep't of Fin.*, 2024 WL 3833971, at *7 (S.D.N.Y. Aug. 14, 2024) (dismissing cooperative dialogue claim where plaintiff failed to offer specific allegations in support of their claim).

***Second***, even assuming Plaintiff had properly and timely asserted a cooperative dialogue claim, his so-called proposal was patently unreasonable on its face. It squarely conflicted with the client's requirement for a three-day onsite presence and directly contradicted the assessment of Plaintiff's own treating physician, who concluded that, following his July 2022 fall, he could not endure *any* commute due to severe exhaustion. (JSOF ¶ 91; SOF ¶ 64–65, 67.)

Plaintiff's position borders on nonsensical. He contends Kroll violated the NYCHRL by refusing an "accommodation" request that both conflicted: (1) with the remote-work arrangement already granted to him after a cooperative dialogue with Lewis; (2) with his own medical documentation and physician recommendation requiring him to remain fully remote. *See* (JSOF ¶ 58-62.) Plaintiff cited case law is inapposite, as none of them find that an employer violates the NYCHRL by granting an accommodation that could not meet the essential requirements of a position or assignment, a previously disclosed medical restriction, or

previously provided accommodation. (Opp. at. 19-20.) His attempt to spin these irreconcilable contradictions into evidence of discrimination not only lacks merit, but it also obliterates the foundation of his cooperative dialogue theory. *See e.g.*, *Rochelle v. AutoZoners, LLC*, 2023 WL 5935835, at *16 (S.D.N.Y. Sept. 12, 2023) (denying cooperative dialogue claims where prior evidence showed that the employer engaged in prior dialogue and granted accommodation request).

## IV. Kroll's PIP Process was Consistent with its Policies and Practices

As anticipated, Plaintiff argues his PIP demonstrates discrimination or retaliation because the termination decision was made 23 days (or 17 business days) after its issuance without a meeting with Joseph. This argument is unavailing. (Mem. at 24-27.)[2]

***First***, while Plaintiff takes issue with the length of time he remained on a PIP (Opp. at 22), it is undisputed that Kroll does not prescribe a fixed period for employees to demonstrate improvement. (JSOF ¶ 19; SOF ¶ 77–80.) Thus, the duration of Plaintiff's PIP is a red herring. It is also undisputed that Plaintiff never contacted Joseph with any questions about the PIP—even though he had Joseph's personal number and Joseph maintained open office hours for performance discussions and served as Plaintiff's Career Advisor. (JSOF ¶ 107–108.) Further, Plaintiff plainly understood the PIP and received ongoing coaching and feedback from Lewis and Povinelli after it was issued. (SOF ¶ 83–86.) He also routinely discussed and solicited feedback on his business development efforts during weekly Directors' calls, as business generation was a continuing concern for Joseph. (JSOF ¶ 35, 67–68, 72; SOF ¶ 145–150.) Plaintiff cannot

[2] Plaintiff fails to counter Kroll's argument that the VPs identified in its motion are not similarly situation. Thus, the Court should disregard Plaintiff's argument relating to these employees. *See Xiao Hong Zheng v. Perfect Team Corp.*, 739 F. App'x 658, 662-663 (2d Cir. 2018) (a factual statement will be deemed admitted where a non-movant does not dispute nor meaningfully contest the statement in their opposition to a movant's 56.1 statement of material facts).

creditably state that his performance was not discussed, or feedback was not given during the PIP process.

***Second,*** it is undisputed that Plaintiff's performance continued to falter during the PIP. Plaintiff wholly ignores the independent and contemporaneous complaints raised by Betty Valouktzis. She was so dissatisfied with his performance during the PIP period that she requested his removal from a project due to his excessive billing practices, inefficiency, poor substantive knowledge, and lack of responsiveness. (SOF ¶ 122–127.) These deficiencies mirror the performance issues identified by Jospeh and Povinelli. (SOF ¶ 18, 20–24, 39–47, 69–80, 89–121.) This independent corroboration of Plaintiff's performance further confirms the lack of a discriminatory motive or influence behind Joseph's termination decision.

Against this backdrop, Joseph was entirely justified in relying on Povinelli's assessments, his observations, and the objective performance data in reaching the decision to terminate Plaintiff's employment. (Mem. at 15-19.)

## V. Kroll's Decisions were Not Motivated by Discrimination or Retaliation

Kroll has articulated a legitimate, non-discriminatory reason for Plaintiff's termination: his sustained and documented poor performance. (Mem. at 10-23.) Plaintiff's flawed arguments cannot show that Kroll's proffered reasons were pretextual and motivated by disability discrimination or retaliation. (Opp. at 23-26.)

***First***, while Plaintiff may disagree with his managers' assessment of his work performance, it is well-settled that "[t]he mere fact that an employee disagrees with [his] employer's assessment of [his] work . . . cannot standing on its own show that [his] employer's asserted reason for termination was" based on discrimination. *Griffin v. Ambika Corp.*, 103 F. Supp. 2d 297, 308-309 (S.D.N.Y. 2000) (quoting *Ricks v. Conde Naste Pub., Inc.*, 92 F. Supp. 2d

338, 347 (S.D.N.Y. 2000)); *Owens v. City of N.Y. Dep't of Educ.*, 2022 WL 17844279, at *2 (2d Cir. Dec. 22, 2022) (rejecting subjective beliefs and affirming summary judgement based on "overwhelming evidence of performance deficiencies"); *Bentley-Ammonds v. Northwell Health, Inc.*, 2022 WL 893716, at *3 (2d Cir. Mar. 28, 2022) (same).

***Second***, Plaintiff did not receive any positive reviews that would call into question Joseph's termination decision. (Opp. at 24-25.) His 2021 Performance Rating is a red herring—it was a placeholder rating because he had only joined Kroll on September 18, 2021 and departed on an extended leave to through April 18, 2022. (Mem. at 16.) This fact is unrebutted with no contrary concrete evidence.

Even if the Court were to consider this rating, "the mere fact that [Plaintiff] had received . . . favorable ratings in the past does not alone raise an inference of pretext" for a termination that occurred months later. *Lifranc v. N.Y.C. Dep't of Educ.*, 2010 WL 1330136, at *15 (E.D.N.Y. Apr. 6, 2010), *aff'd*, 415 F. App'x 318 (2d Cir. 2011). Isolated satisfactory feedback for two months cannot excuse ninth months of objectively poor performance. (Mem. at 16;) *see also Romero v. St. Vincent's Servs., Inc.*, 2023 WL 3477161, at *2 (2d Cir. May 16, 2023) (affirming summary judgment where positive reviews and a raise did not negate negative performance evaluations).[3]

***Third,*** Plaintiff's argument that Povinelli was responsible for his low productivity and utilization because of client budgets or hour "back-outs" on the Lakemore and TCU projects is unavailing. Even crediting self-serving reasoning, Plaintiff admits that he maintained at most seven clients—far below the 20 to 25 clients expected of a Director. (SOF ¶ 92–93.) That shortfall was not the result of any limitation imposed by Joseph or Povinelli, as both continued to

[3] Plaintiff's reliance on *Macropoulos v. Metro. Life Ins. Co.*, is misplaced as the Court there found that six years of positive performance belied the termination decision. 2018 WL 1508564, at *11 (S.D.N.Y. Mar. 26, 2018). Here, Plaintiff received one placeholder review after two months of work during his extended leave.

provide him with work from a variety of clients. (SOF ¶ 69, 76, 102-121.) While Plaintiff grumbles that he cannot assign himself work (Opp. at 25), this excuse undercut by the business generation requirements for Directors. (SOF ¶ 87, 95-96.) Plaintiff was responsible for generating revenue (*i.e.*, billable work) through business development with existing or prospective clients. He undisputably failed to do so, which lead to is paltry productivity.[4]

Further, it is also undisputed that Plaintiff utilization was approximately 20%, which is well below the 70% expectations. (JSOF ¶ 30; SOF ¶ 17.) Again, even if Plaintiff's theory were credited and his negative or reversed hours were added back to his billable hours, it would only increase his billable hours to 475.75, which would yield just a 32% utilization rate. (Mem. at 17.) Plaintiff asks this Court sit as a super-personnel department and override Kroll's facially neutral business practices. The law states otherwise. *See Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 121 (1st Dep't 2012) (explaining that a reviewing court "should not sit as a super-personnel department that reexamines an entity's business decisions").

## CONCLUSION

For the foregoing reasons, Kroll respectfully requests that the Court grant its motion, dismiss the Civil Complaint with prejudice, and grant any just, proper, and equitable relief.

[4] The cat's paw theory does not apply here, as suggested in passing by Plaintiff, as his own argument undercuts the theory. (Opp. at 23.) According to Plaintiff, both Povinelli and Joseph subjected him the discrimination and retaliation. Putting that aside, the termination decision was solely made by Joesph, and it was certainly not impacted by Povinelli's claim that she had not heard from Plaintiff "in a few days." *See Wright v. City of Syracuse*, 611 F. App'x 8, 11, n.2 (2d Cir. 2015) (rejecting the "cat's paw" theory of liability where the defendants provided a legitimate, nondiscriminatory reason for the adverse action, and where the plaintiff failed to provide evidence of pretext by plaintiff's supervisors).

Dated: September 5, 2025

Respectfully submitted,

**SEYFARTH SHAW LLP**

*/s/ Ephraim Pierre*
Ephraim J. Pierre
Dov Kesselman
Ashley Casey
620 Eighth Avenue
New York, New York 10018-1405
Tel: (212) 218-5500
Fax: (212) 218-5526
Dkesselman@seyfarth.com
epierre@seyfarth.com
Acasey@seyfarth.com
*Attorneys for Defendant*

**LOCAL CIVIL RULE 7.1(c) WORD COUNT CERTIFICATION**

Pursuant to Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that the foregoing Reply Memorandum of Law in Furter Support of Defendant's Motion for Summary Judgment complies with word-count limitations. The foregoing Memorandum of Law contains 3,498 words, not including the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates.

*/s/ Ephraim J. Pierre*
Ephraim J. Pierre