USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/8/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DENNIS DUMAS,

Plaintiff,

-against-

KROLL, LLC,

Defendant.

23-CV-05013 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

This is an employment discrimination case. Plaintiff is Dennis Dumas. Defendant is his former employer, Kroll, LLC ("Kroll"). Plaintiff alleges Kroll discriminated against him based on a disability in violation of the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") and retaliated against him in violation of the NYCHRL. Before the Court is Kroll's motion for summary judgment. On careful review of the record and the parties' filings, the Court determines—however narrowly—that Kroll has not established that discrimination or retaliation played "no role" in its ultimate decision to terminate Plaintiff, as required under the relevant law. Therefore, Kroll's motion is DENIED.

## BACKGROUND

## I. RELEVANT FACTS[1]

### A. Overview of Plaintiff's Employment

At the time of Plaintiff's employment, Kroll's employees included Anna Povinelli, who was a managing director in Kroll's Financial Services Compliance and Regulation ("FSCR")

[1] The following facts are taken from the parties' Joint Rule 56.1 Statement (Dkt. No. 43-1, "SOF") and evidence from the record, where undisputed. The Court refers to the memoranda of law in support of and in opposition to the motion for summary judgment as follows: Kroll's memorandum of

Group; Ken Joseph, who was the U.S. Head of Kroll's Regulatory Consulting Practice; Peter Wilson, who was a managing director in the FSCR Group; and Colton Lewis, who was Kroll's Business People Partner II. SOF ¶¶ 20, 23, 58. Plaintiff began working at Kroll as a Director in the FSCR Group on September 13, 2021. SOF ¶¶ 3–4. Two months later, on November 11, 2021, Plaintiff took a medical leave in advance of a November 12, 2021 heart surgery. *Id.* ¶¶ 37–39. The surgeon inadvertently pierced Plaintiff's heart, and he suffered a stroke on November 21, 2021. *Id.* ¶ 38. Plaintiff remained on medical leave until April 18, 2022. *Id.* ¶ 39. While Plaintiff was on medical leave, he received a performance review for 2021—which could only have been based on the period between September 13, 2021, and November 11, 2021, rating him as "fully meets goals." *Id.* ¶ 50.

Plaintiff returned to work on April 18, 2022. *Id.* ¶ 39. On July 19, 2022, about three months after returning to work, Plaintiff fell at the office, struck his head, and was rushed to the hospital where he remained for two days. *Id.* ¶ 56. The following day, Joseph approved Plaintiff's request to work remotely full-time. *Id.* ¶ 62. Povinelli, who managed Plaintiff after his return in April 2022, was aware of the remote work arrangement. *Id.* ¶ 86.

**B. Plaintiff's Negative Work Performance**

The record is replete with evidence establishing that Kroll and its employees were not satisfied with Plaintiff's work. Multiple emails and other communications reflect that management noted Plaintiff's work contained unacceptable typos and erroneous conclusions. *See, e.g.*, Dkt. No. 44-41. On one instance, Povinelli chastised Plaintiff for sending documents to a client—without her approval—that contained numerous errors. Dkt. No. 44-19. In Kroll's

law supporting the motion (Dkt. No. 42) as "Mot."; Plaintiff's opposition (Dkt. No. 55) as "Opp."; and Kroll's reply (Dkt. No. 62) as "Reply."

view, Plaintiff overbilled on research, in one instance depleting the majority of allotted billing for a client on ministerial projects. Dkt. No. 44-4 at 78:13–79:17. He also showed an inability to juggle multiple projects or supervise staff. Dkt. Nos. 44-22–23. These problems culminated in an August 8, 2022 mid-year review in which Plaintiff received mostly negative feedback. Dkt. No. 44-20. As early as August 31, 2022, management was discussing whether to put Plaintiff on a Performance Improvement Plan, or "PIP." Dkt. No. 44-41.

### C. The Secondment Opportunity and Plaintiff's Termination

In the early fall of 2022, Povinelli received word from a Kroll client called Assured Investment Management ("Assured") that it was seeking a secondee. In a September 7, 2022 email chain including Povinelli, Joseph, and Wilson, Povinelli  Plaintiff as a possible candidate. Dkt. No. 44-21. She indicated he could be a good fit given that the focus on one client might better suit his strengths. *Id.* Joseph expressed some trepidation "[g]iven [Plaintiff]'s performance and limited knowledge set." *Id.* Povinelli responded Plaintiff could—as a secondee—"at least help us earn money as opposed to his current status." *Id.* In a September 9, 2022 email, Povinelli stated she spoke with Assured about a full-time secondment and indicated Plaintiff could be "the front man." Dkt. No. 44-11. She confirmed that Assured said Plaintiff "can be mostly remote." *Id.* And she indicated in a later email that same day that the secondment would "be a good chance for [Plaintiff] to prove himself, or not," presumably referencing Plaintiff's perceived performance thus far and management's discussions regarding the possible PIP. *Id.*

On September 20, 2022, Povinelli and a representative from Assured exchanged emails about Plaintiff. Dkt. No. 44-29. The representative asked, "just to confirm, as we discussed, [Plaintiff] would be available to be onsite approximately 3 days a week, correct?" *Id.* Povinelli

responded, "[Y]es, [Plaintiff] should be available 3 days a week as Kroll is required to attend 3 days a week starting in [October]." *Id.*.

That same day, Povinelli and Plaintiff conferred about the secondment opportunity. As an accommodation for his medical situation, "Plaintiff proposed using a car service to and from Assured's office . . . two days a week given his approved remote work accommodation." SOF ¶ 91. Povinelli then told Plaintiff to "forget leading the project." *Id.* ¶ 92. The next day, on September 21, 2022, Povinelli emailed Joseph and Wilson that another employee could step in as the secondee and go in-person to Assured two days a week. Dkt. No. 44-12. The email also stated, "I have a call with Colton [Lewis] today to update him on [Plaintiff], and put forth a plan," seemingly a reference to the previously-discussed PIP. *Id.*

On September 27, 2022, Povinelli provided a draft PIP to Joseph and Lewis. Dkt. No. 58-9. Joseph and Lewis informed Plaintiff he was being placed on a PIP during a meeting on October 25, 2022. SOF ¶ 103. In a meeting on November 28, 2022, Joseph and Lewis informed Plaintiff his employment at Kroll would end effective December 9, 2022. *Id.* ¶ 111.

## II. PROCEDURAL HISTORY

Plaintiff filed this lawsuit on June 14, 2023. Dkt. No. 1. His complaint includes three counts: discrimination in violation of the NYCHRL; discrimination in violation of the NYSHRL; and retaliation in violation of the NYCHRL. *Id.* at 14–16. Following the close of fact discovery, Kroll moved for summary judgment. Kroll argues Plaintiff cannot establish a *prima facie* case of discrimination or retaliation and, even if he could, Kroll has carried its burden of showing it fired Plaintiff due to his documented and pervasive performance issues.

## DISCUSSION

On the record presently before the Court, Plaintiff does not have a strong case. Ample record evidence supports that Kroll terminated his employment not due to any discriminatory animus but due to his numerous performance issues. But the Court's role at this juncture is not to sit as a fact-finder, but to assess whether any reasonable jury *could* find in favor of Plaintiff. A jury could so find. Accordingly, summary judgment must be denied.

### I. LEGAL STANDARD ON SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court shall grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)..[2] "A fact is 'material' when it 'might affect the outcome of the suit under governing law.'" *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)). In determining whether a genuine issue of material fact exists, "[t]he evidence of the nonmovant is to be believed," and a court must draw "all justifiable inferences" in favor of the nonmovant. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

Courts consider NYCHRL and NYSHRL discrimination claims under liberal standards "broadly in favor of discrimination plaintiffs." *Albunio v. City of New York*, 16 N.Y.3d 472, 477–78 (N.Y. 2011). A plaintiff must first meet a "minimal" burden of establishing a *prima*

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

*facie* case of discrimination. *Uttarwar v. Lazard Asset Mgmt. LLC*, No. 24-CV-01085, 2025 WL 704278, at *2 (2d Cir. Mar. 5, 2025). In a disability case, a plaintiff may do so by showing he was treated "less well" because of his disability. *Mihalik v. Credit Agricole Cheuvreux N. Am. Inc.*, 715 F.3d 102, 110 (2d Cir. 2013). If a plaintiff establishes a *prima facie* case, the defendant must offer legitimate and nondiscriminatory reasons for its actions. *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010). "If the defendant satisfies that burden, summary judgment is appropriate if no reasonably jury could conclude that either the defendant's reasons were pretextual or that the defendant's stated reasons were not its sole basis for taking action, and that its conduct was based at least in part on discrimination." *Ya-Chen Chen v. City University of New York*, 805 F.3d 59, 76 (2d Cir. 2015). "In other words, summary judgment is appropriate if the record establishes that discrimination or retaliation played *no* role in the defendant's actions." *Id.* (emphasis added).

## II. DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DISCRIMINATION CLAIMS

Plaintiff's discrimination claims survive summary judgment—however narrowly—based on the events surrounding the secondment opportunity at Assured.[3] Shortly before the secondment opportunity arose, management had been considering whether to put Plaintiff on a PIP. And Povinelli floated the secondment as a potential opportunity for Plaintiff to prove himself, given his previous performance issues. Nevertheless, it is possible that a reasonable

[3] Plaintiff can show a *prima facie* case of discrimination. His performance reviews before and after his accident show a marked difference in how management evaluated his performance. Povinelli made a comment to Plaintiff about having a lot of time on his hands due to his medical issues. Dkt. No. 44-17. When Plaintiff appeared in the office on one occasion, Povinelli, Joseph, and Wilson exchanged messages expressing surprise at Plaintiff's presence in the office and expressed a hope he was interviewing elsewhere. *Id.* ¶ 64. Furthermore, and most importantly, there was a close temporal proximity between Plaintiff's request for accommodations that would make it possible for him to accept the Assured secondment and the final decision to place Plaintiff on a PIP, which was a prelude to his eventual termination.

jury could conclude that Kroll withdrew the secondment opportunity and placed Plaintiff on a PIP, precipitating his eventual termination, at least in part due to his request for accommodations related to the Assured secondment.

Plaintiff had a full-time remote work arrangement due to his medical disability. SOF ¶ 62. Povinelli knew about this remote work arrangement. *Id.* ¶ 86..[4] When Povinelli was making the case for why Plaintiff might be a good fit for the secondment, she highlighted that Plaintiff could be "mostly remote," although Assured "would like him in the office occasionally." Dkt. No. 44-11. But, in a September 20, 2022 email between Povinelli and an Assured representative, Povinelli stated that Plaintiff "should be available 3 days a week," which was irreconcilable with Plaintiff's then-existing accommodation. Dkt. No. 44-29. Povinelli also withdrew the secondment opportunity from Plaintiff following his request for a modified accommodation, including that he be permitted to perform the secondment with just two, rather than three, in-person days each week. Crucially, the employee who eventually took on the secondment was only required to be in Assured's office two days a week, the precise accommodation that Plaintiff requested and was denied. Furthermore, in the email where Povinelli announced another worker would complete the secondment, she also stated she would work to put forth a "plan" for Plaintiff, a clear reference to the PIP that was ultimately a prelude to his termination.

Drawing all inferences in Plaintiff's favor, and in deference to the overwhelmingly favorable standard accorded to plaintiffs under the NYCHRL and NYSHRL, the Court cannot

[4] In its briefing, Defendant disputes whether Povinelli knew about Plaintiff's remote-work accommodation. Mot. at 19. But the joint statement of facts, which Kroll filed, clearly stipulates that Povinelli knew about the accommodation. SOF ¶ 86. Even if there is some ambiguity about the full scope of Povinelli's knowledge, on summary judgment all inferences must be drawn in Plaintiff's favor.

determine as a matter of law that discrimination played "no role" in Plaintiff's eventual termination. *Ya-Chen Chen*, 805 F.3d at 76. The secondment was an opportunity for Plaintiff to prove himself, but it was offered on terms (in-person attendance three days a week) irreconcilable with his disability-related accommodation for full-time remote work. Povinelli promptly told Plaintiff to "forget about the secondment" after he requested a modified accommodation, including permission to only go to Assured's office two days a week. But the employee who ultimately completed the secondment did so on the terms that Plaintiff requested (and was denied)—*i.e.*, to go to Assured's office two days a week. The record is also clear that Povinelli drafted the PIP almost immediately after Plaintiff requested a modified accommodation to accept the secondment. A reasonable and properly instructed jury could rely on this evidence to conclude that Kroll terminated Plaintiff not only due to his performance issues but also, at least in part, due to his disability and corresponding request for accommodations. Accordingly, the question of whether discrimination played "any role" in Kroll's decision to terminate Plaintiff must be presented to the jury..[5]

## III. DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIM

Plaintiff's retaliation claim survives for a similar reason. To state a claim for retaliation under the NYCHRL, a plaintiff must allege (1) he engaged in a protected activity; (2) his employer was aware of the activity; (3) something happened that would be reasonably likely to deter a person from engaging in protected activity; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Pouncy v. Advanced Focus LLC*, No. 15-CV-06260 (JMF), 2017 WL 4280949, at *6 (S.D.N.Y. Sept. 25, 2017), *aff'd*, 763 F. App'x 134

[5] To be clear, nothing in the record supports a claim of discrimination prior to the secondment episode.

(2d Cir. 2019). Kroll challenges only whether Plaintiff has established a causal connection between the adverse action—Plaintiff requesting a modified accommodation—and his termination. But a reasonable jury could conclude that, although management had already been considering whether to place Plaintiff on a PIP, the chain of events surrounding the secondment opportunity was the final nail in the coffin. Given the close connection between Plaintiff's accommodation request and the decision to place him on a PIP, which was a prelude to the termination of his employment shortly thereafter, a reasonable jury drawing all inferences in favor of Plaintiff could find in his favor under the NYCHRL's liberal standard. Accordingly, Defendant's motion for summary judgment on the retaliation claim must also be denied.

## CONCLUSION

For the foregoing reasons, Kroll's motion for summary judgment (Dkt. No. 41) is DENIED. The parties are hereby ORDERED to file a joint letter by **September 29, 2026**, regarding next steps, including whether the parties wish to pursue alternative dispute resolution, such as mediation or a settlement conference before the assigned Magistrate Judge, or are prepared to proceed to trial.

Dated: September 8, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge